A89A1977. CHAPMAN v. NATION.
(388 SE2d 744)

SOGNIER, Judge.

Helen Nation brought a dispossessory action against Russell F. Chapman after purchasing Chapman's home at foreclosure proceedings instituted by her. The trial court entered judgment in favor of Nation, and Chapman appeals.

The parties stipulated the following facts: In order to complete

the construction of his home, on May 22, 1986 appellant executed a promissory note to appellee for $55,200. Monthly payments were due on the 20th of each month beginning June 20, 1986 and each month thereafter until May 20, 1993, when a final, balloon payment was due. The note provided that if any installment was not paid when due, the entire unpaid principal balance would, at the option of the holder and without notice to the maker, become due and payable. On the same date appellant also executed a deed to secure debt, which was duly recorded.

During the first two years after execution of the note and security deed, several late payments were made and accepted. On April 6, 1988, when the February and March 1988 payments had not been made, appellee notified appellant by certified mail of her intention to foreclose. The letter was never claimed. However, on April 7, appellant's wife paid appellee $2,586.19 and entered into an agreement with appellee, signing "[a]s [a]gent for Russell F. Chapman." The agreement set forth the manner in which the funds paid were to be disbursed and provided that appellee would postpone foreclosure proceedings for 30 days, that appellant agreed that no further notice was necessary to inform him of such foreclosure proceedings, and that "[appellant] hereby recognizes that even though the payments have been brought current, the Promissory Note has already been declared in default and that [appellee's] acceleration of the maturity of the debt remains unchanged and that nothing contained in this document shall be considered a waiver of her right of acceleration or stop her from foreclosing the mortgage in May, in accordance with the provisions contained in the Promissory Note and Deed to Secure Debt."

Nevertheless, another notice of foreclosure was sent on May 3, 1988, which was claimed by appellant's wife. The sale was advertised for 5 weeks, beginning May 6, 1988, and on June 7, 1988 appellee bought the property on the courthouse steps, and a deed under power was thereafter executed and recorded.

1. Appellant contends that the trial court erred by finding that there was a lawful foreclosure and that appellee was entitled to possession, because there had been a mutual departure from the terms of the original note, and thus, pursuant to OCGA § 13-4-4, appellee was required to notify appellant that she intended to rely on the exact terms of the original agreement before properly declaring a default. See *Continental Cas. Co. v. Union Camp Corp.*, 230 Ga. 8, 10-14 (1) (195 SE2d 417) (1973). However, "[f]or a departure from the terms of a contract to be sufficient to require notice by one of the parties of his or her intention to insist upon strict compliance with the contract, the departure must be mutual and intended, such that the parties have essentially a new agreement concerning the requirements of the original contract. [Cits.] Although [appellant] may have unilaterally inter-

preted [appellee's] acceptance of several of his late payments as a waiver of the necessity to strictly comply with the specified payment schedule, there is no evidence that that was [appellee's] intention. In fact, [appellee's] . . . expression of displeasure with the late payments shows that [she] did not intend to waive the requirement that [appellant] make his future payments on the 20th day of each month. [Cits.]" *Duncan v. Lagunas*, 253 Ga. 61, 62-63 (1) (316 SE2d 747) (1984). Appellee testified that she frequently had to call appellant's wife to get even the late payments, and that all late payments were protested either by her personally or by her financial assistant. Accordingly, we find no mutual departure. Id.

2. Appellant maintains the trial court's rulings were also improper because the loan was not in default at the time of the May 3rd notice of foreclosure. We find no merit in this contention. Appellee's election to accelerate was made on April 6th, when the loan was in default and prior to her acceptance of the payments made on April 7th. "Where the election to accelerate is declared prior to the tender of arrearage, the rights of the parties are the same as if the entire note had by its terms become due immediately upon default. The entire debt being due, the mere acceptance of part-payment thereon does not amount to a waiver of the prior default or undo the maturity of the remainder of the indebtedness, nor set it forward to the date originally fixed under the terms of the original contract. [Cits.]" *Philyaw v. Fulton Nat. Bank*, 139 Ga. App. 28, 30 (227 SE2d 811) (1976).

Moreover, even assuming that the default had been cured, it is uncontroverted that the 1986 and 1987 property taxes were not paid until appellee paid them on June 15, 1988, after the foreclosure sale. The deed to secure debt provided that "if [appellant] shall fail to pay any taxes assessed against said property when same becomes due, then the total principal debt hereby secured shall become due and payable at once at the option of the holder." Thus, the failure to pay taxes operated as a default as well, allowing appellee to accelerate the debt and authorizing foreclosure pursuant to the security deed. *Jones v. Hamilton Mtg. Corp.*, 139 Ga. App. 239, 242 (1) (228 SE2d 170) (1976). See also *Bozeman v. Horton*, 245 Ga. 188, 189 (1) (263 SE2d 922) (1980).

3. We need not address appellant's contention that the agreement signed by his wife was not binding on him, as our decision that foreclosure was proper and affirmance of the trial court's award of possession to appellee do not rest on the validity of that agreement.

*Judgment affirmed. Banke, P. J., and Pope, J., concur.*

DECIDED NOVEMBER 21, 1989.

*Little & Adams, Sam F. Little*, for appellant.
*J. Tracy Ward*, for appellee.